STATE OF CONNECTICUT *v.* JUAN ARROYO

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 5—decision released March 25, 1980

*Richard R. Brown,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Martin P. Gold,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant was indicted for the crime of murder in violation of General Statutes § 53a-54a (a) and (c), pleaded not guilty, and elected to be tried by a jury of twelve. The jury returned a verdict of guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a). The defendant appealed from the judgment on the verdict.

In the evening hours of February 25, 1978, a shooting occurred in a cafe in Hartford. When the police arrived, the victim of the shooting was found lying on the floor in the cafe. The victim bled to death. He had been shot once with a .22 caliber bullet which pierced the upper left chest. There were several witnesses at the scene of the shooting. Three witnesses testified that they saw the defendant shoot the victim. Two witnesses testified that they heard a shot and saw the victim fall. There was also evidence that the defendant was carrying a shotgun at the time of the shooting. The defendant and his brother testified that the defendant did not shoot the victim and that another man named Nigro who had a .22 caliber rifle shot him.

The defendant claims that the court's instructions to the jury violated the defendant's constitutional right to due process by shifting the burden of proof on intent to the defendant in violation of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111 (1979). Ordinarily this court would refuse to review claimed error in the charge where no exception was taken below. Because the error claimed, however, affects a fundamental right, the defendant's failure to object and to take an

exception does not preclude appellate review. *State v. Cook,* 174 Conn. 73, 75, 381 A.2d 563 (1977); *State v. Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

In *Sandstrom,* supra, the court held that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates the due process clause of the fourteenth amendment, because a reasonable juror could have interpreted this instruction as a burden-shifting presumption like that invalidated in *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), or as a conclusive presumption like those invalidated in *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978), and *Morissette* v. *United States,* 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). *Sandstrom,* supra, 524. In *Harrison,* supra, 692, this court invalidated, under *Sandstrom,* an instruction that "[t]he State does not have to offer evidence to prove that a man charged with a crime actually had a guilty intent. This is because a person is presumed to have intended to do the act which he did do. Accordingly, until some credible evidence comes into the case tending to prove . . . [otherwise], the State may rest upon the presumption that the accused intended to commit an act which he did commit." The court found that this instruction constituted what could have been interpreted by the jury as either a conclusive presumption or an explicit shifting of the burden of proof on intent to the defendant. Id. The court also noted, as did the United States Supreme Court in *Sandstrom,* that although the court must consider the charge as a whole to determine whether any portion constitutes error; *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); see also *Cupp* v. *Naughten,* 414

U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973);
general instructions to the jury that the defendant
is innocent until proven guilty and that the state
bears the burden of proving the crime beyond a
reasonable doubt do not remedy the damage done
by either a conclusive or a burden-shifting pre-
sumption. *Harrison,* supra, 697, citing *Sandstrom,*
supra, 518 n.7.

The holdings of *Sandstrom* and *Harrison* must
not be oversimplified. *Sandstrom* does not inval-
idate the use of all inferences and presumptions
with regard to criminal intent. To the contrary, the
court took care to incorporate its analysis of infer-
ences and presumptions in an opinion issued two
weeks earlier; *Ulster County Court* v. *Allen,* 442
U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979);
where it sanctioned the use of an "entirely permis-
sive inference or presumption, which allows—but
does not require—the trier of fact to infer the ele-
mental fact from proof by the prosecutor of the
basic one and that places no burden of any kind
on the defendant." *Ulster County Court,* supra, 157.
Clearly, the use of the word "presumes" is not in
and of itself what rendered the charge in *Sandstrom*
invalid. It was the "lack of qualifying instructions
as to the legal effect of the presumption"; *Sand-*
*strom,* supra, 517; in addition to the use of the word
"presumes," which rendered it possible that a rea-
sonable jury could have interpreted the instruction
as either a conclusive or burden-shifting presump-
tion, thereby depriving the defendant of his right
to due process of law. Id. In *Harrison,* supra, 697,
the first opportunity which this court had to apply
the holding of *Sandstrom,* the court noted that
other instructions may be adequate to overcome the
potential for confusing the jury on the issue of

inferences and presumptions with regard to intent if those instructions clearly delineate the state's burden of proof on every element, including intent. The court in *Harrison* concluded, however, that all of the trial court's instructions on the element of intent, when considered together, did not overcome the damage done by the harmful portion. Id.

The issue presented in the present case is whether the court's instructions on intent as elements of the crimes charged and on the inferences and presumptions which the state relied upon to prove intent could have been interpreted by the reasonable juror as either a conclusive or a burden-shifting presumption thereby undermining the jury's responsibility as factfinders at trial to find the ultimate facts beyond a reasonable doubt based on evidence adduced by the state. *Sandstrom,* supra, 523; *Ulster County Court,* supra, 157. If the court's instructions could have been so interpreted, they deprived the defendant of due process of law and there is error. *Sandstrom,* supra; *Ulster County Court,* supra; *Hammontree v. Phelps,* 605 F.2d 1371, 1379–80 (5th Cir. 1979); *Dlugash v. People,* 476 F. Sup. 921, 923–25 (E.D. N.Y. 1979); *Holloway v. McElroy,* 474 F. Sup. 1363, 1366–67 (M.D. Ga. 1979); *State v. Harrison,* supra; *State v. Bryant,* 26 Crim. L. Rptr. 2016 (Tenn. 1979). If, on the other hand, the instructions made it clear that the jurors were permitted but not required to infer criminal intent from the defendant's conduct, then the instructions do not violate the defendant's fourteenth amendment guarantees. *United States v. Spiegel,* 604 F.2d 961, 968–69 (5th Cir. 1979); *Gagne v. Meachum,* 602 F.2d 471, 473–74 (1st Cir. 1979); *McInerny v. Berman,* 473 F. Sup. 187, 189–90 (D. Mass. 1979); *Jacks v. State,*  Ind.  ,

394 N.E.2d 166, 174–76 (1979); *State* v. *Rinehart*, 283 N.W.2d 319, 320–23 (Iowa 1979); *State* v. *Acheson*, 3 Kan. App. 2d 705, 713–16, 601 P.2d 375 (1979); *People* v. *Gray*, 71 App. Div. 2d 295, 298–300, 423 N.Y.S.2d 66 (1979).[1]

Both murder, the crime with which the defendant was charged, and manslaughter in the first degree with a firearm, the crime with which the defendant was convicted, require a specific criminal intent.[2] Before instructing the jury on the specific intents required by the statutory definitions, the court instructed them on inferences and circumstantial evidence, outlining the jury's right to draw reasonable inferences from established facts. Then the court delivered separate and complete instructions as to each offense, with no incorporation of its previous instructions on murder while instructing the jury on first degree manslaughter with a firearm. Its instructions on the specific intents required for each crime were delivered separately. For each crime the court charged: "[I]ntent is a mental process. A person's intention may be inferred from his conduct. Every person is presumed to intend the natural probable consequences of his act."

---

[1] The three remaining reported cases which have been decided by lower courts under *Sandstrom* hold that although there is or may be error in the charge, the error is not reversible. *United States* v. *Fowler*, 605 F.2d 181, 183–85 (5th Cir. 1979); *United States* v. *Continental Group, Inc.*, 603 F.2d 444, 463–66 (3d Cir. 1979); *United States ex rel. Collins* v. *Crist*, 473 F. Sup. 1354, 1357–58 (D. Mont. 1979).

[2] General Statutes § 53a-54a, which defines the crime of murder, requires "intent to cause the death of another person." Section 53a-55a (a) defines the crime of first degree manslaughter with a firearm in terms of § 53a-55 which defines manslaughter. Section 53a-55 requires "intent to cause serious physical injury to another person."

While discussing the crime of murder, the court, after making the remarks above, immediately continued, saying: "It is often impossible and never necessary to prove criminal intent by direct evidence. Ordinarily, intent can be proved only by circumstantial evidence as I have explained that term to you. Now, as to intent which a person may have, that is what a person's purpose, design, intention was is necessarily a matter of inference. A man may take the witness stand and testify directly as to what his purpose or intention was, and that testimony you can believe or not, according to whether or not it warrants belief or not. But no witness can be expected to come here and testify that he looked into another person's mind and saw therein a certain purpose or intention or certain knowledge. The only way in which a jury can determine what a person's purpose or intention was, at any given time, aside from that person's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from those, infer what his purpose or intention was. Now to draw such an inference is not only the privilege, but it is also the duty of a jury, provided, of course, the inference drawn is a reasonable one and a logical one. Now, one that uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was the intent to cause the death. Any inference that may be drawn from the nature of the weapon and the manner of its use, is an inference of fact to be drawn from the jury upon consideration of these and other circumstances in the case."

While instructing the jury on first degree manslaughter with a firearm, the court said that the state must prove beyond a reasonable doubt that the defendant shot the victim with the intent to inflict serious physical injury on him. The court then stated: "As I have previously said, intent is a mental process. A person's intention may be inferred from his conduct. Every person is presumed to intend the natural probable consequences of his act." No further instructions on intent as an element of first degree manslaughter with a firearm, the lesser included crime, were given.

After the jury had begun their deliberations, they requested repetition of the three possible verdicts stated in the court's charge. The court reviewed its instructions on the elements of murder and first degree manslaughter with a firearm, repeating verbatim its charge on the elements of intent. The jury found the defendant guilty of first degree manslaughter with a firearm.

Considering the instructions on the crime of murder in view of the charge as a whole, the trial court's charge does not possess the potential for conclusiveness or burden-shifting that was present in *Sandstrom* v. *Montana,* supra, or *State* v. *Harrison,* supra. When in the midst of its other instructions on intent as an element of the crime, the trial court stated that "[e]very person is presumed to intend the natural probable consequences of his act," a reasonable juror could only have concluded that the presumption was permissive, that is, that the jury was permitted to draw the conclusion that the defendant intended to kill the victim but was not required to do so. This is especially so in light

of the fact that the court's instructions immediately preceding the attacked phrase stated that intent "may be inferred from his conduct" and those immediately following the attacked phrase stated that intent "is necessarily a matter of inference" and that the "only way in which a jury can determine what a person's purpose or intention was, at any given time, aside from that person's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from those, infer what his purpose or intention was." The attacked sentence of the charge, when considered within the context of the court's charge on murder, its prefatory instructions on inferences and circumstantial evidence, and the charge as a whole, could not be reasonably construed to require a conclusive presumption or a shifting of the burden of proof and did not deprive the defendant of his due process right to a fair trial. *Sandstrom,* supra; *Ulster County Court,* supra; *Harrison,* supra, 697.

The court's instructions on manslaughter in the first degree with a firearm were not as precise or as comprehensive as those given on the crime of murder. With regard to intent, the only instructions given were as follows: "As I previously stated, intent is a mental process. A person's intention may be inferred from his conduct. Every person is presumed to intend the natural probable consequences of his act." The court gave no further explanatory instructions. Its supplemental charge manifests the same omissions. This instruction, that a person is presumed to intend the natural and probable consequences of his act, parallels the condemned language in *Sandstrom* v. *Montana,*

supra. Its conclusive and burden-shifting tenor is not overcome by the single statement that intent "may be inferred" from conduct. The court's instructions to the jury on manslaughter did not refer to its previous instructions on intent as an element of murder. Therefore, it cannot be assumed that the court's instructions on intent as an element of murder would have been applied to such an extent that the jury unquestionably would have considered them in conjunction with the court's instructions on intent as an element of manslaughter. Since the court's instructions on intent as an element of manslaughter can reasonably be construed to create in the mind of a reasonable juror the impression that he was required to presume the defendant intended the consequences of his actions or to presume this unless the defendant introduced some evidence to the contrary, the instructions were constitutionally impermissible. *Sandstrom* v. *Montana*, supra; *State* v. *Harrison*, supra. Furthermore, the jury's verdict is consistent with the possibility that they believed such a presumption on their part was required with regard to manslaughter, but not murder.

In view of the determination that the court's instructions on intent as an element of manslaughter were in error, there is no need to discuss the defendant's claim of error in the court's instruction to the jury that it was their "duty" to draw an inference provided that inference is a reasonable and logical one. The error claimed with regard to the charge as a whole and based on a discussion of evidence by the court is not in error. Nor need we

comment on the evidentiary claim of error which remains because it is not likely to reoccur in a new trial.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.